# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SILVIA LOPEZ,** | **1:14-CV-00236-LJO-GSA** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS'MOTION TO DISMISS (DOC. 12)** |
| **v.** | |
| **GENEVIEVE SHIROMA, an individual; CATHRYN RIVERA-HERNANDEZ, an individual; J. ANTONIO BARBOSA, an individual; SILAS SHAWVER, an individual; and DOES 1-20,** | |
| **Defendants.** | |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

1  visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a

2  U.S. District Judge from outside the Eastern District of California.

3  ## II. INTRODUCTION

4       Plaintiff Silvia Lopez is an employee of Gerawan Farming, Inc. (Gerawan), who seeks to

5  disassociate from Gerawan's certified bargaining representative, the United Farm Workers of America

6  (UFW or the Union). Lopez Compl. Doc. No. 2 (hereinafter "Compl.") ¶¶ 1, 32-33. Plaintiff petitioned

7  the Agricultural Labor Relations Board (ALRB or the Board) to conduct a decertification election

8  pursuant to California's Agricultural Labor Relations Act (ALRA or the Act). *Id* at ¶ 32. The Board

9  granted the request, but impounded the ballots from the election in response to allegations of unfair

10  labor practices and election improprieties. *Id* at ¶ 36. Plaintiff alleges that the decision to impound the

11  ballots was pretextual and that the Board intends to impose a collective bargaining agreement upon

12  Gerawan employees notwithstanding the results of the election. *Id.*at ¶ 41.

13       Plaintiff seeks an order from this Court forcing the ALRB to count the ballots and make the

14  election results public, as well as other relief. *Id* at ¶¶ 48, 51, 57 and p. 17 ¶¶ 1-5. Before this Court is

15  Defendants' Motion to Dismiss, Defs.' Mot. To Dismiss, No. 12-1 (hereinafter Defs.' Mem.), pursuant

16  to Federal Rule of Civil Procedure 12(b) (6).

17  ## III. BACKGROUND

18  **A.**  **California's Agricultural Labor Relations Act**

19      **1.**  **ALRA Personnel**

20       California's Agricultural Labor Relations Act (ALRA) is administered by the Board and a

21  separate office of general counsel. Cal. Lab. Code §§ 1141(b), 1149 (all further statutory references are

22  to the California Labor Code unless otherwise specified). The general counsel and the five members of

23  the Board are appointed by the governor. *Id.* The Board adjudicates unfair labor practice (ULP)

24  allegations, drafts regulations, and oversees union representation elections. §§ 1142, 44. The general

25  counsel's office is responsible for investigating and prosecuting ULP claims. § 1149. The general

26  counsel's office supervises attorneys appointed by the board, as well as officers and employees of

1 regional offices. § 1145.

2 Regional directors investigate petitions seeking to certify or decertify a bargaining

3 representative, 8 Cal. Code Regs. §§ 20385, 20390, oversee elections, *id.* § 20350, initiate compliance

4 proceedings, *id.* § 20290, and investigate ULPs, *id.* § 20216. Parties may appeal most decisions made by

5 a regional director to the Board, *id.* §§ 20219, 20393.

6 The executive secretary acts as liaison between the Board and parties appearing before it. The

7 Secretary maintains a list of parties with actions currently pending before the Board, *id.* § 20162 and

8 manages its docket, *id.* §§ 20190, 20231 & 20240. The executive secretary also appoints investigative

9 hearing examiners to address allegations of election improprieties. *Id.* § 20370

10 **2.    ALRA Proceedings**

11 The ALRB oversees proceedings addressing ULP complaints and union representation issues,

12 which are significantly different in nature.

13 Any person may file a charge alleging a ULP. Cal. Lab. Code § 1160.2; 8 Cal. Code Regs. §

14 20201. The regional director investigates the charge, and the general counsel's office will issue a formal

15 complaint if there is "reason to believe" a ULP has been committed. 8 Cal. Code Regs. §§ 20216,

16 20220. Parties issued a complaint have a right to a hearing. *Id.* § 20269. ULP hearings are similar to

17 court trials in that parties may call witnesses, and engage in discovery and motions practice. *Id.* §§

18 20237, 20246, 20260 & 20269. An administrative law judge (ALJ) presides over the hearing, makes

19 findings of fact and issues a decision. *Id.*, §§ 20279-82. Parties may file an exception to the ALJ's

20 findings, requiring the Board to review the findings and issue a final decision. *Id.* § 20286. Parties can

21 also request that the Board reconsider its own final opinions. *Id.* A party may appeal a final order of the

22 Board to a California appellate court, but review is limited to issues of law. Cal. Lab. Code §§ 1160.8,

23 1164. Published board decisions are precedential. 8 Cal. Code Regs. § 20287.

24 Representation issues are addressed through a process of petitioning for certification or

25 decertification of a bargaining representative. Cal. Lab. Code § 1156.3; 8 Cal. Code Regs. § 20300.

26 When a petition is filed, the regional director conducts an investigation to determine if there is an

3

1   adequate showing of interest. 8 Cal. Code Regs. § 20300. "The regional director's determination of the

2   adequacy of the showing of interest to warrant the conduct of an election shall not be reviewable." *Id.*

3   The regional director supervises any subsequent election. *Id.* § 20350. Any party can challenge the

4   eligibility of a voter or submit objections to the manner in which the election was conducted. *Id.* §§

5   20355, 20365. The executive secretary deals with election challenges and objections by appointing an

6   investigative hearing examiner (IHE). *Id.* § 20370(a). Either the Board or the regional director may order

7   ballots impounded while these proceedings are ongoing. *Id.* § 20360. The IHE conducts a hearing and

8   issues findings and a decision. *Id.* § 20370(b)-(i). A party may file an exception to the IHE's decision.

9   *Id.* § 20370(j). The Board may also review the IHE's findings on its own initiative. *Id.* § 20370(k).

10  However, "to be *entitled* to administrative review by the Board complainants must present a prima facie

11  case that specific misconduct tainted the election." *Lindeleaf v. Agric. Labor Relations Bd.,* 41 Cal. 3d

12  861, 868 (1986) (emphasis added); *J.R. Norton Co. v. Agric. Labor Relations Bd.*, 26 Cal. 3d 1, 9

13  (1979). Generally, decisions as to whether the election results are valid are not reviewable by state court.

14  *Cadiz v. Agric. Labor Relations Bd.*, 92 Cal. App. 3d 365, 382 (1979). The *Cadiz* Court explained that

15  "[t]he ALRA further promotes the speedy resolution of representation issues by statutorily fixing the

16  collective bargaining unit and providing for post rather than pre-election hearings on issues bearing on

17  elections." *Id.* at 375.

18  **B.      Factual Background[1]**

19          Plaintiff Silvia Lopez is an employee of Gerawan. Compl. ¶ 1. The UFW has represented

20  Gerawan employees since 1992. *Id.* at ¶ 7. According to Plaintiff, the UFW "did absolutely nothing" on

21  behalf of Gerawan employees between 1995 and 2012. *Id*. at ¶ 26. In October 2012, UFW sent a letter to

22  Gerawan "requesting negotiations." *Id*. at ¶ 27. In November of 2012, Gerawan agreed to negotiate in

23  good faith. *Id.* In March 2013, the UFW invoked the Mandatory Mediation and Conciliation process

24  under Section 1164 of the California Labor Code, and the ALRB compelled the parties to arbitrate their

25

26  [1] These background facts are drawn exclusively from Plaintiff's Complaint, the truth of which must be assumed for purposes of a Rule 12(b)(6) motion to dismiss.

4

1  bargaining disagreements. *Id.* at ¶ 28. The Board adopted the mediator's report harmonizing the parties'

2  positions in November of 2013. *Id.* at ¶¶ 29-30. Gerawan challenged the ALRB's initial order to

3  arbitrate the contract in state court, where the case is still pending. *Id.* at ¶ 31.

4        Meanwhile, Gerawan employees seeking to disassociate from the UFW began organizing among

5  themselves. *Id.* at ¶ 32. On September 18, 2013, employees submitted a petition to conduct a

6  decertification election. *Id.* Defendant Silas Shawver (Shawver), Regional Director of the Visalia

7  Regional Office of the ALRB, denied the petition on September 26, 2013, due to an insufficient number

8  of signatures. *Id.* at ¶ 33. Employees submitted a second petition on October 25, 2013. *Id.* at ¶ 34.

9  Shawver denied this petition as well, but the Board overturned his decision. *Id.*

10        On October 31, Shawver issued a decision to block the election. *Id.* at ¶ 36. The ALRB

11  overturned this decision and ordered the decertification election to be held on November 5, 2013. The

12  Board issued the decision as an administrative order (the Order), which was signed by Defendants

13  Shiroma and Rivera-Hernandez, as well as then-ALRB member Herbert O. Mason (who is not a party to

14  this action). Compl. ¶ 24, Ex. A. In the same order, the Board ordered the ballots for the election

15  impounded pending resolution of any related labor complaints and any election challenges. *Id.*

16        Prior to the election, the UFW challenged the employment status of individuals on several crews.

17  *Id.* at ¶ 38. Shawver segregated challenged voters and had them sign declarations. *Id.* Many of the

18  segregated voters "were told they were being 'investigated' and their eligibility to vote was suspect" by

19  Shawver. *Id.*at ¶ 39.

20  **C.**   **<u>Procedural Posture</u>**

21        Ms. Lopez filed claims against Shawver, Board members Shiroma and Rivera-Hernandez,

22  Executive Secretary J. Antonio Barbosa, and twenty unnamed defendants. Compl. ¶¶ 2-5.

23        Plaintiff's causes of action, Compl. ¶¶ 43-57, and p. 17 ¶¶ 1-5, are a bit unclear, but the Court

24  can discern that Plaintiff intends to bring causes of action for constitutional deprivations pursuant to 42

25  U.S.C. § 1983 as laid out more specifically below.

26        Plaintiff's First Cause of Action alleges deprivations of Plaintiff's due process rights regarding

her "liberty interest in having a fair election and property interest of her wages and working conditions." *Id.* at ¶ 47.[2] The First Cause of Action also asserts that Plaintiff was deprived of her "First Amendment rights (including freedom of association)." *Id*. at ¶ 47. Plaintiff complains about three "course[s] of conduct" as well as additional "determinations herein described." *Id*. at ¶¶ 44-45. The "course of conduct" complaints are: "(1) the summary dismissal of the petition, based on pre-textual charges, which led to the impoundment; (2) the interference with the election itself, via en masse segregation of voters; and (3) the delay in completing the investigation . . ." *Id.* at ¶ 44. These allegations pertain to acts conducted by Shawver, and are more fully described in paragraphs 33-35, & 38. The Court reads the term "determinations herein described" as referring to Shawver's "summary dismissal" of the decertification petitions as well as the Board's decision to issue the Order. *Id.* at ¶¶ 44 & 24 ("These fundamental federal and state constitutional rights are violated by the Defendants' decision, which is attached hereto as Exhibit 'A,' to not count the ballots of the election and place these ballots under seal."); ¶ 46 (alleging Plaintiff's due process rights were violated because "Defendants rushed to judgment and issued that the ballots be impounded.").

Plaintiff's Second Cause of Action calls for a declaration stating that the election is "null and void as a violation of the United States Constitution." *Id.* at ¶ 50. It also seeks mandatory injunctive relief in the form of an order to count the impounded ballots. *Id.*; *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (a mandatory injunction orders a party to take some action). The basis for this relief is premised on due process violations asserted in the First Cause of Action and the "determinations" alleged in paragraph 45. *Id.* at ¶ 50. ("Defendants . . . in making determinations herein described deprived Plaintiff of her rights and privileges guaranteed under the Fourteenth Amendment . . .").

The Third Cause of Action alleges that Defendants infringed on Plaintiff's First Amendment right of association, "and more specifically her right not to associate with the UFW." *Id.* at ¶ 53. This

---

[2] Plaintiff does not clarify whether she is alleging substantive or procedural due process violations. Because the Court only needs to address threshold issues to respond to the Motion to Dismiss, this Order applies either way.

1   claim is also based on the "determinations" alleged in paragraph 45. *Id.* at ¶ 54. Plaintiff's Third Cause

2   of Action also alleges due process claims that are identical to those brought in the First Cause of Action.

3   *Cf.* Compl. ¶¶ 46, 55.[3]

4       Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

5   on the basis that (1) Defendants are shielded from Section 1983 liability by the doctrines of absolute

6   quasi-judicial and quasi-prosecutorial immunity; (2) Plaintiff's claims are barred by *Younger* abstention;

7   and (3) Plaintiff fails to state claims as matters of law. Defs.' Mem. at 1.

8   ### IV. <u>STANDARD OF DECISION</u>

9       A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

10   allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a

11   cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

12   *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

13   for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes

14   the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the

15   pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

16       To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim

17   to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

18   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

20   662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

21   more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

22   556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

23   short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*,

24   550 U.S. at 557).

25

26   [3] It is not clear why Plaintiff's first and third causes of action both assert both First Amendment and Due Process claims.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. DISCUSSION

**A.    Failure to State Claims as Matters of Law**

**1.    Claims Against the Executive Secretary**

Defendant moves to dismiss all claims against Defendant Barbosa, on the basis that the Complaint provides him "absolutely no notice of what he is alleged to have done wrong." Defs.' Mem. at 19-20.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor

knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743–44. In general, a state actor's conduct only implicates liability under section 1983 if the conduct occurs in the course of performing an actual or apparent duty of her office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office. *Carson v. Cnty. of Stanislaus*, 1:10-CV-02133-OWW, 2011 WL 3813193 (E.D. Cal. Aug. 29, 2011) *aff'd,* 532 F. App'x 662 (9th Cir. 2013).

As Defendants point out, "a plaintiff [in a § 1983 case] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Defs.' Mem. at 19 (quoting *Ashcroft*, 556 U.S. at 676). Plaintiff argues that Mr. Barbosa is included in every allegation naming "Defendants" and should be treated in a similar manner. Plaintiff's Opposition, Doc. No. 15, 21 (hereinafter "Opposition"). But, Mr. Barbosa's role as executive secretary is substantially different from that of the Board Members, *see* 8 Cal. Code Regs. §§ 20162, 20190 & 20231 (explaining that this role involves scheduling hearings and managing the ALRB's docket), and he did not sign the administrative order that is the basis for claims brought against them. Nor does Plaintiff allege any facts that suggest that he may be liable for the same actions that the regional director is. There is no basis presented by the facts alleged in the Complaint to assume that Mr. Barbosa was responsible for any of the conduct alleged.

Therefore, the Court GRANTS WITH LEAVE TO AMEND Defendant's Motion to Dismiss all claims against Mr. Barbosa.

**2.     Claims Against Board Members**

Plaintiff alleges that her constitutional rights were violated by "the Defendants' decision, which is attached hereto as Exhibit 'A,' to not count the ballots of the election and place these ballots under seal." Compl. ¶ 24. Defendant Board members signed the Order. Compl. Ex. A; *see also* Defs. Mem. at 18 ("The sole allegation of wrongdoing against the Board Member s in each of these three causes of action is that they impounded the ballots from the decertification election . . ."); Plaintiff's Opposition, No. 15 (hereinafter "Opposition") at 8 ("What is being challenged here is Defendants' order to impound

9

the ballots and not count the votes."). They are potentially personally liable for participating in a decision-making process that allegedly deprived Plaintiff of her constitutional rights. *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995) (board members of public agency potentially liable for due process violations by "participating in an unfair decision-making process.").

Plaintiff claims that the Board Members' decision to impound the ballots deprived her of two protected interests without adequate due process and constituted a direct violation of her First Amendment Right not to associate with the UFW. Compl. ¶¶ 10, 47, 48, 53. Defendant moves to dismiss on the basis that Plaintiff fails to fulfill threshold criteria for due process and First Amendment claims. Defs.' Mem. at 17.

        a.      **Due Process Claims Against Board Members.**

Plaintiff claims that the Order deprived her of property in the form of reduced wages and changed working conditions. Compl. ¶¶ 10, 47, 48. This allegation is based on the theory that the Order forces Plaintiff to be bound by the terms of a collective bargaining agreement that might not be valid if the ballots in the decertification election were counted. *Id.* at ¶ 10. As the United States Supreme Court observed in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), to have a protected property interest, an individual "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." The Supreme Court held that property interests giving rise to due process protection "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . ." *Id.* Accordingly, a determination of whether Plaintiff has a property interest in her working conditions, wages, or union membership status requires an examination of state law. The Parties did not address whether Plaintiff's interests in unchanged working conditions or wages are constitutionally protected. However, the Court need not decide the issue at this point. Even if Plaintiff has a protected interest, she does not assert facts that suggest she has been, or will be, deprived of these interests. For example, Plaintiff does not allege that she has or will lose wages, prospects for continued employment, or will suffer altered working conditions. Rather, plaintiff speculates that she "will be bound by a

collective bargaining agreement crafted by way of secret proceedings." Compl. ¶ 10. Plaintiff does not identify (nor could this Court find) any precedent finding that the imposition of a collective bargaining agreement *on its own* amounts to a constitutional deprivation. In California, contracts can only create protected property interests when their *terms* are guaranteed by the state. *Walker v. N. San Diego Cnty. Hosp. Dist.*, 135 Cal. App. 3d 896, 901 (1982) ("A *term* of employment set by contract has been recognized as a property right which *the state* cannot extinguish without conforming to the dictates of procedural due process."). Contracts are *evidence* that property rights exist, not property unto themselves. *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987) ("[W]ritten contracts, as clear evidence of a formal understanding supporting a claim of entitlement, can create protected property interests."). Plaintiff claims that she may not wish to be bound by the CBA because she may not agree with its terms. Compl. ¶ 10. She fails to allege, however, that the CBA will impose any particular condition on her that will deprive her of any form of property, much less property which to which she is entitled to by state law.

Thus, she has failed to state a plausible claim that her property interests were denied to her without due process.

Plaintiff also claims that she has been deprived of "her liberty interest of having a fair election." *Id*. at ¶ 47.[4] While Plaintiff does not allege that Board members interfered with election activities or that the Order on its own undermined the integrity of the decertification election, the act of impounding the ballots can be read as interfering with a fair election process. Citing *Jacobson v. Hannifin*, 627 F.2d 177, 181 (9th Cir. 1980), Defendants argue that Plaintiff does not have a protected interest in the manner in which the ALRB conducts an election. Defs. Mem. at 21. *Jacobson*, however, does not apply to the issue of whether Plaintiff has a "liberty" based interest because that case was about whether certain procedures gave rise to a property interest. 627 F. 2d at 180 (finding that the Gaming Control Act did not grant Plaintiff a property interest in a license because the Act "unmistakably commits the substance

---

[4] Plaintiff's opposition suggests that she may also wish to assert a freedom of association-based deprivation as a due process claim. Opposition at 19-20. This is not clear in the Complaint; nor is it clear that such a right exists. The Court will disregard this argument.

1   of decisions regarding licensing applications to the discretion of the Commission."). *Id.* Because

2   Plaintiff alleges a liberty interest, *Johnson* does not control.

3   It is Plaintiff's burden, however, to identify a legal basis for claims she alleges. *Twombly*, 550

4   U.S. at 570. To assert a due process claim, the Plaintiff must identify deprivation of a protected interest.

5   *Wedges/Ledges of California, Inc. v. City of Phoenix*, Ariz., 24 F.3d 56, 62 (9th Cir. 1994) ("A threshold

6   requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or

7   property interest protected by the Constitution.). "[T]he range of interests protected by procedural due

8   process is not infinite." *Roth*, 408 U.S. at 570; see also *Paul v. Davis*, 424 U.S. 693 (1976) (holding that

9   the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may

10   already be administered by the States."). The term "liberty" implies freedom from bodily restraint as

11   well as an individual's right "to contract, to engage in any of the common occupations of life, to acquire

12   useful knowledge, to marry, establish a home and bring up children, to worship God ..., and generally to

13   enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men."

14   Roth, 408 U.S. at 572 (internal citations and quotations omitted). Plaintiff does not provide (nor could

15   this Court identify) any legal authority for the proposition that a delay in the ballot count of a union

16   election pending investigation of election improprieties is the sort of right considered "essential to the

17   orderly pursuit of happiness by freemen." *Id*. For these reasons, this Court GRANTS WITH LEAVE TO

18   AMEND Defendants' Motion to Dismiss Plaintiff's claims arising under 42 U.S.C. § 1983, to the extent

19   that these claims arise under 42 U.S.C. § 1983 for violations of Fourteenth Amendment rights of due

20   process, as to Defendant Board Members Shiroma and Rivera-Hernandez.

21   **b.   Freedom of Association Claim Against Board Members.**

22   Plaintiff seeks to recover under Section 1983 for violations of her first amendment rights. This

23   allegation is based on the theory that the Order forces Plaintiff to associate with UFW against her will.

24   Compl. ¶¶ 10, 47-48, & 53-54. Defendants make two arguments against this claim. First, Defendants

25   claim that Supreme Court jurisprudence broadly rejects the principle that there is any constitutional right

26   to avoid union membership for the purposes of collective bargaining. Defs.' Mem. at 19. Second,

1  Defendants argue that the Order, on its own, does not directly affect UFW's representation status and

2  therefore cannot serve to infringe on Plaintiff's rights of association. *Id.*

3        Defendants rely on *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977), for the premise that

4  "compel[ing] association with labor unions . . .fall[s] well within the legislature's constitutional

5  authority and do[es] not violate the First Amendment rights of employees." Defs.' Mem. at 18. The

6  *Abood* Court upheld a state law authorizing a system for union representation of local governmental

7  employees, which required employees to contribute to the union's operational costs. 431 U.S. at 241.

8  The Supreme Court recognized that employees "may have ideological objections to a wide variety of

9  activities undertaken by the union in its role as exclusive representative" which invoked their first

10  amendment rights. *Id.* at 222. Any constitutional infringement, however, was "justified by the legislative

11  assessment of the important contribution of the union shop to the system of labor relations established

12  by Congress." *Id*. The holding in *Abood,* is limited to the extent that it reinforces the principle that

13  employees can be compelled to contribute to the costs of an established bargaining representative. *Id.* at

14  222-23 ("As long as they act to promote the cause which justified bringing the group together, the

15  individual cannot withdraw his financial support merely because he disagrees with the group's

16  strategy.").

17        Plaintiff's case presents different issues from those articulated in *Abood* because she is arguing

18  that UFW's representation status is illegitimate. Compl. ¶ 41 (alleging that the Order to impound the

19  ballots "is a purposeful tactic" and that if the ballots were to be counted "Defendants and the Board

20  would have no choice but to decertify the UFW's representation of Gerawan employees."). Assuming

21  this allegation to be true, as the Court must do on a motion to dismiss, changes the weights assigned to

22  either side of the scales in a First Amendment analysis. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623

23  (1984). ("Infringements on [the right to associate for expressive purposes] may be justified by

24  regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot

25  be achieved through means significantly less restrictive of associational freedoms."). Because the

26  holding in *Abood* does not extend to a situation in which a union's bargaining representative status is

1   illegitimate and Defendants do not address how the government's interests outweigh Plaintiff's First

2   Amendment interests in this context, the Court will refrain from addressing the subject at this time.

3        Defendants also argue that the Order cannot compel Plaintiff to associate with the Union, since

4   the election must be certified to effect change in UFW's bargaining status. Defs.' Mem. at 19. This

5   argument puts the cart before the horse. Decertification is the only mechanism by which Plaintiff can

6   disassociate from the UFW. The ballots must be counted before the election can be certified. Thus, the

7   impoundment (which prevents the ballots from being counted) compels Plaintiff's continued association

8   with the UFW.

9        Defendants also argue, in a footnote in their reply, that Plaintiff does not identify a plausible First

10  Amendment claim. Reply at 8, n. 7. Defendants state that "the First Amendment contains no standards to

11  identify an unconstitutionally pre-textual petition dismissal, wrongful impound, interference or delay."

12  *Id.* Defendant is correct that Plaintiff does not identify standards that apply first amendment protections

13  to these circumstances. However, the Supreme Court recognizes that compelling union membership

14  invokes first amendment rights. *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. &*

15  *Station Employees*, 466 U.S. 435, 455 (1984) ( *"*But by allowing the union shop at all, we have already

16  countenanced a significant impingement on First Amendment rights. The dissenting employee is forced

17  to support financially an organization with whose principles and demands he may disagree."). Because

18  Plaintiff plausibly asserts that she is being compelled to continue to associate with the UFW, she has

19  properly invoked the foundation for a First Amendment claim.

20       For these reasons, this Court DENIES Defendants' Motion to Dismiss Plaintiff's First and Third

21  Causes of Action, to the extent they that they arise under 42 U.S.C. § 1983, for violations of First

22  Amendment rights of association, as to Defendants Shiroma and Rivera-Hernandez.

23       **3.**   **Claims Against the Regional Director**

24       Plaintiff alleges that Defendant Shawver violated her constitutional rights based on three separate

25  courses of conduct: "(1) the summary dismissal of the petition, based on pre-textual charges, which led

26  to the impoundment; (2) the interference with the election itself, via en masse segregation of voters; and

14

1  (3) the delay in completing the investigation . . .” *Id.* at 44 (attributed to Shawver in paragraphs 33-35, &

2  38). Defendants argue that these allegations form the basis only for Plaintiff's First Cause of Action.

3  Defs.' Mem. at 20. They argue that claims brought under the Second and Third Causes of Action cannot

4  apply to Shawver because they are based on the consequences of the administrative order, for which he

5  cannot he held responsible. *Id.* As discussed in Section III(C), *supra*, the Court reads the Complaint as

6  alleging due process and First Amendment claims based on all three courses of conduct.

7          **a.**    **Due Process Claims Against Defendant Shawver.**

8             **(1)**    **Due Process Implications of Dismissing Decertification Petitions**

9         Plaintiff alleges that Shawver's "summary dismissal of the petition" deprived her of her due

10  process rights. Compl. ¶¶ 44-47. As Defendants point out, the Complaint does not specify whether

11  Shawver's "summary dismissal of the petition" applies to the first or second petition filed by Plaintiff, or

12  to Shawver's attempt to block the election; however the same analysis applies to all of these actions.[5]

13  Defendants argue that none of these actions could have denied Plaintiff of a protected interest because

14  the Board overturned them. Defs.' Mem. at 20. They argue that because the election eventually

15  happened, no damage occurred. *Id.* Plaintiff argues that the denials caused a delay in the election

16  process. Compl. ¶ 41; Opposition at 22. Plaintiff believes that the ALRB is taking advantage of these

17  delays to enforce the collective bargaining agreement (CBA) it approved on November 13, 2013.

18  Compl. at ¶ 30, Opposition at 22. Plaintiff claims the imposition of the CBA is a "grave consequence"

19  that would deprive her of her "property interest of her wages and working conditions." Compl. at ¶ 47,

20  Opposition at 13. However, a party must demonstrate not just a "grave consequence" but a "reasonable

21  expectation of entitlement deriving from existing rules or understandings that stem from an independent

22  source such as state law." *Wedges/Ledges*, 24 F.3d 56 at 62. Here, Plaintiff has not alleged facts that

23  suggest her current working conditions or wages are protected by any state-backed guarantee. For

24

25

26  [5] Defendants argue in a footnote to their reply brief that this claim is factually insufficient. The Court will not consider arguments brought for the first time in a reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.");

example, she does not claim that she has a contract with the state or is currently subject to a contract that is protected by state law. Because Plaintiff does not identify a plausible foundation for her claim that she may have a state-backed protected property interest in her current working conditions or wages, there is no basis for her due process claim.

### (2)   Due Process Implications of Alleged Election Interference

Plaintiff claims that Shawver violated her "liberty interest [in] having a fair election" by segregating and interviewing voters in response to last minute "crew challenges" which were alleged by UFW. Compl. ¶¶ 38-40, 47. An agent overseeing a union election however, has a duty to challenge "any prospective voter who fails to supply identification as required [in above subsections], or any prospective voter concerning whom the Board agent concludes there is a substantial question of identity." 8 Cal. Code Regs. § 20355(c). As discussed in Section (V)(A)(2)(a), *supra,* Plaintiff has not established that participation in a union election free of the activities of which Shawver is accused is the sort of right considered "essential to the orderly pursuit of happiness by freemen." *Roth*, 408 U.S. at 572. Thus, this Court finds that Plaintiff fails to assert a due process claim against Defendant Shawver based on his alleged interferences with the decertification election.

### (3)   Due Process Implications of Alleged Investigation Delays

Plaintiff claims that Shawver delayed unfair labor investigations prior to the election. Compl. ¶ 44. She argues that these delays violated her due process rights because they were intended to thwart her opportunity for a decertification election. *Id.* Defendants argue that the Complaint identifies no protected interest in having the investigations terminated within any specific timeframe. Defs.' Mem. at 20. Plaintiff's only rebuttal to this argument seems to be that the delays may result in the imposition of the CBA. Opposition at 23. As discussed above, the potential imposition of "grave consequences" does not necessarily invoke a "legitimate claim of entitlement." *Roth,* 408 U.S. at 577. Plaintiff has not alleged a constitutional deprivation.

//

//

**b.**     **First Amendment Claims Against Defendant Shawver.**

### (1)     First Amendment Implications of Dismissing Decertification Petitions

Defendants argue that because Plaintiff was not subject to the CBA during the month-long period between when Shawver dismissed her first petition and when the election eventually occurred, dismissal of Plaintiff's decertification petition could not have deprived her of associational rights. Defs.' Mem. at 20. Plaintiff, however, asserts that the dismissal forced her to remain associated with the UFW for at least a month longer than she wanted to be. Compl. ¶ 44. As discussed above, compelling association with a union invokes First Amendment rights. *Ellis,* 466 U.S. at 455. While the effects of the deprivation may be negligible, that does not mean that the deprivation did not occur.

Defendants assert that Plaintiff has no claim because the CBA did not attach during the delay. Defs.' Mem. at 20. This argument is only meaningful if damages are a necessary element of § 1983 liability. In the Ninth Circuit, however, "[a] plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm. *Estate of Macias v. Ihde.* 219 F.3d 1018, 1028 (9th Cir. 2000) (internal citations and quotations omitted). Further, in the event that a constitutional violation is found, "the trier of fact must award nominal damages to the plaintiff "as a symbolic vindication of her constitutional right." *Id.* Plaintiff has asserted a deprivation of such a right here.

### (2)     First Amendment Implications of Alleged Election Interference and Investigation Delays.

The immediately preceding analysis applies with equal force to Plaintiffs' allegations that Defendant Shawver interfered with the election itself, via en masse segregation of voters and delayed completion of his investigation. Again, Plaintiff asserts that this conduct forced her to remain associated with the UFW for longer than she would have wanted. This states a plausible claim for a First Amendment deprivation.

For these reasons, this Court GRANTS WITH LEAVE TO AMEND Defendants' Motion to Dismiss Plaintiff's claims arising under 42 U.S.C. § 1983 for violations of Fourteenth Amendment

1  rights of due process, as to Shawver. The Court DENIES Defendants' Motion to Dismiss Plaintiff's First

2  and Third Causes of Action, to the extent that they assert claims arising under 42 U.S.C. § 1983, for

3  violations of First Amendment rights of association, as to Shawver.

4  **B.**     **Whether Plaintiff's Claims Are Barred By Official Immunity**

5           **1.**     **Board Members' Assertions of Absolute Quasi-Judicial Immunity**

6           Defendants Shiroma and Rivera-Hernandez claim that because their positions as members of the

7  ALRB are "functionally comparable" to that of a judge, they should be afforded absolute quasi-judicial

8  immunity. Defendants characterize the proceedings that led to the Order as being within "the course of

9  adjudicating the unfair labor practices charges and related election objections concerning the

10  decertification election." Defs.' Mem. at 9. Plaintiffs argue that the Order was given in the Members'

11  administrative capacities, arguing that "[t]here were no hearings, no agency adjudications, and no

12  conduct analogous to judges." Opposition at 17.

13           The proponent of a claim to absolute immunity bears the burden of establishing the justification

14  for such immunity." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993). "Quasi-judicial

15  immunity is extended to nonjudicial officers only where they "perform official duties that are

16  functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving

17  disputes." *Antoine*, 508 U.S. at 433 n.8. To determine whether a nonjudicial officer is entitled to

18  absolute quasi-judicial immunity, courts must look to the nature of the function performed and not to the

19  identity of the actor performing it. *Forrester v. White,* 484 U.S. 219, 229 (1988). It is only when the

20  judgment of an official involves the exercise of discretionary judgment that judicial immunity may be

21  extended to that non-judicial officer. *Antoine,* 508 U.S. at 435.

22           Courts in the Ninth Circuit consider six nonexclusive factors when determining whether a state

23  officer's role is "functionally comparable" to that of a judge. *Buckwalter v. Nevada Bd. of Med.*

24  *Examiners*, 678 F.3d 737, 740 (9th Cir. 2012), as amended (June 8, 2012). These factors are:

25                    (a) the need to assure that the individual can perform his functions without
                    harassment or intimidation;

26                    (b) the presence of safeguards that reduce the need for private damages

1    actions as a means of controlling unconstitutional conduct;
     (c) insulation from political influence;
2    (d) the importance of precedent;
     (e) the adversary nature of the process; and
3    (f) the correctability of error on appeal.

4    *Id.* (internal citations and quotations omitted).

5        The first factor is "the need to assure that the individual can perform his functions without

6    harassment or intimidation." Defendants argue that the Board has exclusive jurisdiction over labor

7    disputes, that these disputes are often "high stakes," and likely to stimulate actions for damages. Defs.'

8    Mem. at 10. Plaintiff does not disagree on this point and neither does the Court. The need for ALRB

9    members to perform their functions without harassment and this factor weighs in favor of granting

10   immunity.

11       The second factor is "the presence of safeguards that reduce the need for private damages

12   actions." Defendants argue that the Board operates under a network of laws and regulations that

13   adequately protects the rights of parties. Defs.' Mem. at 11. Plaintiff contends that none of the

14   procedural safeguards in the ALRA apply to the facts of this case, because she is challenging an

15   administrative order. Opposition at 8. Defendants cite to *Buckwalter* for the premise that absolute

16   immunity can extend to administrative decisions in the course of a judicial process. Reply at 2. The

17   decision in *Buckwalter*, was issued pursuant to a Medical Board's emergency powers. *Buckwalter,* 678

18   F.3d at 741. In that case, the summary suspension of a physician's license triggered a provision in which

19   a formal administrative hearing "must be promptly instituted and determined." *Id*. Here, in contrast, it

20   appears that Plaintiff has no right to a formal hearing or to appellate review. The Order states that it was

21   issued under Labor Code § 1142(b), "pursuant to [the Board's] authority over election matters." Ex. A at

22   4. Administrative orders evaluating election results are generally not reviewable by state courts unless

23   they fall into one of a few narrow exceptions, none of which parties claim apply here.[6] *Agric. Labor*

24   _____

25   [6] The elements are: "First, the challenged order must be 'a plain violation of an unambiguous and mandatory' statutory provision. Second, the order must deprive the complaining party of a right assured to it by the statute. Third, indirect review
26   of the order, through an unfair labor practice proceeding, must be unavailable or patently inadequate." *Agric. Labor Relations Bd*. at 1502-03 (internal quotations and citations omitted).

1  *Relations Bd. v. Superior Court*, 48 Cal. App. 4th 1489, 1499 (1996). Subdivision (a) of Section 1144.5

2  makes the administrative adjudication provisions of the California Administrative Procedure Act

3  inapplicable to proceedings of the ALRB under this part, except hearings to determine unfair labor

4  practice charges. Cal. Lab. Code § 1144.5 (a). Because this order does not invoke procedural safeguards

5  like those recognized in *Buckwalter*, this factor weighs in favor of the Plaintiff.

6      The third factor is "insulation from political influence." The Ninth Circuit has previously held

7  that members of a medical review board were adequately insulated from political influence where the

8  members were appointed to their positions by the governor and could only be removed for cause and

9  there was some separation between their investigatory and adjudicatory responsibilities. *Mishler v. Clift*,

10  191 F.3d 998, 1007 (9th Cir. 1999). ALRB members are also appointed and can only be removed for

11  cause. § 1141(b). Separate offices conduct investigations and adjudicatory hearings. § 1149. Board

12  members are prohibited from engaging in other business while in office. § 1149. Thus, ALRB members

13  are insulated from political influence, by statute, to an equal or greater extent than the medical board

14  members in *Mishler*.

15      Plaintiff argues that it is a question of fact whether or not Board members are *actually* insulated

16  from influence, because they allege Board Members are "in cahoots" with the UFW. Opposition at 9.

17  Defendants argue that whether members are "actually" insulated is irrelevant, based on reasoning

18  outlined in *Buckwalter*. In *Buckwalter,* the Ninth Circuit held that "judicial independence is a structural

19  characteristic, not an empirical one." 678 F. 3d at 744. In that case, the plaintiff in argued that a medical

20  board was not insulated from political influence because a recent scandal prompted it to pursue claims

21  against him aggressively. *Id*. The court held that "[t]he question is whether the conditions of an official's

22  employment tend to promote independent judgment, not whether a particular decision was affected by

23  the official's cognizance of current events." *Id*. Acknowledging that "judges do not exist in a vacuum,"

24  the Ninth Circuit held that "[e]ven if [the plaintiff's] claim that a scandal influenced the Board Members'

25  behavior is true, that fact does not gainsay the Board Members' political independence." *Id.* This Court

26  finds the situation here is similar to the situation in *Buckwalter,* in that Plaintiff accuses Board Members

of bowing to political pressure. Opposition at 8 ("This was an administrative decision that has been influenced by political pressure from the UFW). But the terms of ALRB's appointment provide insulation from this kind of pressure in a manner similar to that found in *Buckwalter*. Thus, this factor is resolved in favor of the ALRB members.

The fourth factor is the extent to which the decision relied on precedent, not (as Plaintiffs interpret) whether the decision itself is precedential. *Mishler*, 191 F.3d at 1007. ALRB members are directed to follow their own decisions and those of the National Labor Relations Board, when applicable. Cal. Lab. Code § 1148; 8 Cal. Cal. Code Regs. § 20287. Tellingly, the administrative order relied heavily on its previous decision in *Cattle Valley Farms* as the basis for its policy on blocking elections. Ex. A at 3-4. This decision relied on precedent and this factor weighs in favor of immunity.

The fifth and sixth factors are the extent to which the process leading to the decision was adversarial and whether the decision is correctable on appeal. Defendants argue that the Order was similar to the decision to issue a summary suspension in *Buckwalter*, which met these criteria. Reply at 3. The summary suspension, however was brought in the context of disciplinary proceedings where physicians before it were entitled to representation by counsel, could present evidence at a formal disciplinary hearing and where judicial review was available. *Buckwalter*, 678 F.3d at 744; *Mishler*, 191 F.3d at 1007. As discussed above, ULP disputes are resolved through an administrative hearing process that is adjudicatory in nature. Attorneys from the General Counsel's office prosecute claims against defendants before an ALJ, and the parties have the ability to subpoena evidence, engage in discovery, and call witnesses. 8 Cal. Code Regs. §§ 20237, 46, 60, 69, 79-82. Representation issues are decided by election, which the ALRB oversees. Cal. Lab. Code § 1156.3; 8 Cal. Code Regs. § 20300. Administrative decisions made by the Board in this context are generally not judicially reviewable. *Cadiz*, 92 Cal. App. 3d at 382. Thus, Defendants' reliance on ULP regulations is misplaced. The dispute that lead to the administrative order was about election process and was dealt with by the Board in their capacity to oversee elections; as opposed to their capacity to resolve labor disputes. As Plaintiff pointed out, there was no formal hearing, no opportunity to bring evidence and no opportunity for judicial

1  review. Opposition at 8. These factors weigh against granting the ALRB members absolute immunity.

2  With three factors weighing for and three factors weighing against granting of absolute

3  immunity, the Court finds that defendants have not met their burden of persuasion. In coming to this

4  decision, the Court recognizes the weight the Ninth Circuit applied to the availability of judicial review

5  in the *Buckwalter* analysis. 678 F.3d at 742-43. The Ninth Circuit found that four out of the six factors

6  weighed in favor of immunity in that case. The Court noted that there were many "procedural

7  deficiencies" in the summary decision to revoke Plaintiff's license. *Id.* at 742. However, the Court found

8  that the process was judicial in nature because "a formal hearing ineluctably follows." *Id.* at 743. Here,

9  Defendants only satisfy three of the factors analyzed and their decisions will not necessarily be "tested

10  in the crucible of an administrative hearing." *Id.* Thus, this case is not analogous to *Buckwalter* and

11  absolute immunity does not apply.

12  Defendants also assert, in a footnote, "[a]lthough the Court should not to reach the issue",

13  "Defendants plainly would be entitled to qualified immunity." Defs.' Mem. at 21, n. 14. ("To the extent

14  the Complaint alleges a deprivation of any protected right, that right was not 'clearly established.'").

15  This cursory argument fails to provide sufficient detail of Defendants' legal argument. Because the issue

16  is not adequately briefed, the Court will not evaluate it.

17  **2.    Regional Director's Claims of Quasi-Prosecutorial Immunity**

18  Defendants seek to dismiss claims against Defendant Shawver on the basis that he is protected

19  by quasi-prosecutorial immunity.[7]

20  Prosecutors, like judges, are extended absolute immunity from damages when performing

21  activities closely associated with the judicial process. *Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976).

22  Quasi-prosecutorial immunity, however, does not attach to administrative or investigatory acts by

23  prosecutors unrelated to their preparation for and initiation of prosecution. *Buckley,* 509 U.S. at 273;

24  *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). In *Romano v. Bible*, Nevada gaming officials

25

26  [7] Defendants also assert that Defendant Shawver is entitled to quasi-judicial immunity, but provide no supporting arguments for this assertion. Thus, this Court will disregard this claim.

were accused of due process violations in connection with their investigation of a casino accused of defrauding gamblers. 169 F.3d at 1184–85. The investigation led to the revocation of the casino's license, which caused financial harm to the owners. *Id.* at 1185. The court found that the gaming officials were entitled to absolute prosecutorial immunity, as "[t]he Gaming Control Board conducts investigations and decides whether to file complaints with the Commission disciplining a licensee.... In so doing, it acts much like a prosecutor." *Id.* at 1187.

As discussed above, Plaintiff seeks to hold Shawver liable for three "courses of conduct." Compl. ¶ 44.

### a. Dismissal of Decertification Petitions

Plaintiff seeks to hold Shawver liable under Section 1983 for his denial of her decertification petition. Compl. ¶¶ 44-45. As Defendants point out, the Complaint does not specify whether these allegations apply to the first or second petition filed by Ms. Lopez, or to Shawver's attempt to block the election; however the same analysis applies to both of these actions. Defendants argue that Shawver's role in reviewing the petition was functionally similar to roles of the gaming commissioners n *Romano* and the medical board examiners in *Mishler*. Defs.' Mem. at 14. Plaintiff argues that Shawver's role in election matters is administrative or investigative, which can only invoke qualified, rather than absolute immunity. Opposition at 11. Defendants rely on *Raghavendra v. N.L.R.B.* for its finding that an NLRB regional director was entitled to absolute immunity for her decision not to "meaningfully investigate" an unfair labor practice allegation. 08-CIV-8120-PAC-HBP, 2009 WL 5908013 at *13 (S.D.N.Y. Aug. 27, 2009). The federal district judge decided that NLRB officer's decision not to pursue claims was "closely intertwined with the decision not to prosecute" and therefore "fundamentally prosecutorial." *Id.* at *13-*14 (internal quotations and citations omitted). The circumstances under which the NLRB officer was granted immunity are different from the circumstances in this case. The issue here is whether Shawver may be liable for decisions he made in his capacity to oversee elections, not in his capacity to prosecute ULPs. As discussed above, the ALRB's role in this context is not fundamentally judicial in nature. Thus, when Shawver blocked the election and dismissed the decertification petitions he was not acting in

"fundamentally prosecutorial" manner, and these actions are not eligible for absolute immunity.

### b.   Election Interference

The Court sees no reason why the immediately preceding analysis should not apply with equal force to Plaintiffs' allegations that Defendant Shawver interfered with the election itself, via en masse segregation of voters. In this context, Shawver was acting in his capacity to oversee elections, not in his capacity to prosecute Defendants argue that this activity is also "related to the adjudication of election challenges." Reply at 4. As discussed above, the ALRB's role in this context is not fundamentally judicial in nature and Shawver is not eligible for absolute immunity for these types of activities.

### c.   Investigation Delays

Plaintiff also seeks to hold Shawver liable for delaying unfair labor investigations prior to the election Compl. ¶ 44. She argues that these delays violated her due process rights because they were intended to thwart her opportunity for a decertification election. *Id*. The Ninth Circuit has found that ULP proceedings are judicial in nature. *Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1357, n.3 (9th Cir. 1986) (holding modified on other grounds).

> The ALRA's procedures provide the exclusive means to redress unfair labor practices, Cal.Lab.Code § 1160.9. Pursuant to these procedures, the Board is authorized to issue complaints, Cal.Lab.Code § 1160.2, take testimony, make findings of fact and grant relief, Cal.Lab.Code, § 1160.3. The ALRA provides for review of Board decisions in Superior Court. Cal.Lab.Code § 1160.8. These proceedings are judicial in nature.

*Id*.

Thus, the question for this Court to decide is whether Shawver acted as a prosecutor in these proceedings. Plaintiff argues that Shawver's role in the proceedings is similar to that of a police officer, rather than a prosecutor, because the ALRA does not explicitly vest him with prosecutorial discretion. Plaintiff does not provide any legal authority indicating the relevance of this observation. Rather, the legal issue to be decided is whether Shawver was functioning as an advocate. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). The *Buckley* court found that a prosecutor cannot function in this capacity "before he has probable cause to have anyone arrested." *Buckley,* 509 U.S. at 274. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on

1    the one hand, and the detective's role in searching for the clues and corroboration that might give him

2    probable cause to recommend that a suspect be arrested, on the other hand." *Id.* at 273. Put another way,

3    the question focuses on whether a prosecutor's actions are "intimately associated with the judicial phase

4    of the criminal process." *Genzler v. Longanbach*, 410 F.3d 630, 643 (9th Cir. 2005) (internal quotations

5    omitted). Applying these standards, the Ninth Circuit has found that a prosecutor's review of a search

6    warrant was intimately associated with judicial activity to the extent that the warrant "sought evidence to

7    prosecute the crimes charged in the indictment." *KRL v. Moore*, 384 F.3d 1105, 1112 (9th Cir. 2004). In

8    contrast, prosecutors were not subject to absolute immunity for inducing false testimony of an expert

9    witness before a grand jury was empaneled or the suspect was arrested. *Milstein v. Cooley*, 257 F.3d

10    1004, 1011 (9th Cir. 2001).

11        Under the ALRA and its implementing regulations, the Regional Director is tasked with

12    investigating charges filed the general counsel's office. 8 Cal. Code Regs. § 20216. Complaints are

13    issued by the office of the general counsel if the office "has reason to believe that an unfair labor

14    practice has been committed." *Id.* § 20220(a). The issuance of a complaint is analogous to an indictment

15    or arrest in that it signals the beginning of the general counsel's prosecution of the case. Following this

16    logic leads to the conclusion that there can be no immunity for investigatory activities that occur prior to

17    the issuance of a complaint. The Order states that the consolidated complaint was issued on October 30,

18    2013- the day before the Order itself was filed. Ex. A at 3. Thus, the disputed conduct must have

19    occurred prior to the issuance of the Complaint. Because prosecutorial activities cannot begin until *after*

20    the general counsel's office has made a determination that there is a "reason to believe that an unfair

21    labor practice has been committed," Shawver cannot be granted absolute immunity for the pre-

22    Complaint delays.

23

C.    ***Younger* Abstention**

24

25        Defendants argue that this Court should dismiss this action under the *Younger* abstention

26    doctrine because the ALRB is currently conducting an adjudication of unfair labor practices at the

Gerawan facility and related objections to the decertification election. Defs.' Mem. at 15.

The Supreme Court's recent decision in *Sprint Communications v. Jacobs* confirmed that *Younger* abstention is limited to the "three exceptional categories" of cases identified in *New Orleans Public Service, Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 367–68 (1989). *Sprint Communications v. Jacobs,* 134 S.Ct. 584, 592 (2013); *see also ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 12-56248, 2014 WL 2611166 at *3 (9th Cir. June 12, 2014). These cases are: (1) "parallel, pending state criminal proceeding[s]," (2) "state civil proceedings that are akin to criminal prosecutions," and (3) state civil proceedings which "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 134 S. Ct. at 588.[8]

The ALRB proceedings here do not fall within the first or third exceptional categories of cases identified in *Sprint* and *NOPSI*. First, they were not state criminal proceedings. Second, the ALRB's order to impound ballots from the decertification elections did not implicate the "State's interest in enforcing the orders and judgment of its courts," *Sprint*, 134 S.Ct. at 588. Such "core" orders involve the administration of the state judicial process—for example, an appeal bond requirement, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. at 12–14, a civil contempt order, *Juidice*, 430 U.S. at 335–36, or an appointment of a receiver, *Lebbos v. Judges of the Superior Court*, 883 F.2d 810, 815 (9th Cir.1989).

Thus, *Younger* abstention will only attach if the ALRB proceedings are an act of civil enforcement "akin to a criminal prosecution in important respects." *Sprint*, 134 S. Ct. at 592. The *Sprint* Court observed that these sorts of cases "are characteristically initiated to sanction the federal plaintiff" and "a state actor is routinely a party to the state proceedings and often initiates the action." *Id* Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* In *Sprint*, the Supreme Court found that a proceeding by the Iowa Utility Board (IUB) did not meet these requirements. This was, in part, because the proceeding was initiated by a private party (rather

---

[8] Parties' reliance on *Fresh International* is misplaced to the extent that it asserts that ALRB proceedings are subject to *Younger* abstention. In *Readylink, Fresh International* was described as a case that did *not* fit in one of the "three exceptional categories." *Id.* Rather, *Fresh International* was considered a case "that implied that district courts must abstain in *any* action when the *Middlesex* factors are present." *Id.*

than a state actor) to resolve a dispute between two telecommunications providers. *Id.* While the private parties settled their dispute and withdrew their filings, the IUB continued the adjudication, because it found it was likely to occur again. *Id.* at 589. The Court disagreed that the continuing adjudication was like an enforcement action because first, it was "invoked to settle a civil dispute between two private parties, not to sanction Sprint for commission of a wrongful act"; and second, "administrative efficiency, not misconduct by *Sprint*, prompted the IUB to answer the underlying federal question." *Id.*

Similarly, the Ninth Circuit recently held that *Younger* abstention did not attach to a decision of the California Department of Insurance, when the adjudication was initiated to resolve a dispute between an employer and a state insurance fund that acted as a private party. *ReadyLink,* 2014 WL 2611166 at *4 ("If the mere "initiation" of a judicial or quasi-judicial administrative proceeding were an act of civil enforcement, *Younger* would extend to every case in which a state judicial officer resolves a dispute between two private parties.").

The facts of this case are similar to the facts of *Sprint* and *Readylink* in that ongoing ALRB proceedings were initiated to resolve a dispute between private parties. Plaintiff sought the Board's approval and oversight when she petitioned for a decertification election. Later, Plaintiff, Gerawan and the UFW sought review from the ALRB when each alleged objections to aspects of the election. Plaintiff alleges that Defendant Shawver filed some enforcement actions against Gerawan during these proceedings. Compl. ¶ 36. However, this Court finds that these activities are secondary to the larger issue in dispute –which is whether the decertification election was conducted properly. This is a dispute between Plaintiff, her employer and the Union; not, at this juncture, between the ALRB and Gerawan or the UFW. Thus, this is not the sort "exceptional case" where *Younger* applies.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS in PART and DENIES in PART Defendants' Motion to Dismiss, as follows:

Defendant's Motion to Dismiss is GRANTED as to Mr. Barbosa, for all causes of action.

Defendant's Motion to Dismiss Plaintiff's First and Second Causes of Action is GRANTED as to

27

1  all other Defendants, to the extent that these claims arise under 42 U.S.C. § 1983 for violations of

2  Fourteenth Amendment rights of due process.

3      Defendant's Motion to Dismiss Plaintiff's First Cause of Action is DENIED as to all Defendants

4  except Mr. Barbosa, to the extent that these claims arise under 42 U.S.C. § 1983 for violations of First

5  Amendment rights of association.

6      Defendant's Motion to Dismiss Plaintiff's Third Cause of Action is GRANTED as to all

7  Defendants, to the extent that these claims arise under 42 U.S.C. § 1983 for violations of Fourteenth

8  Amendment rights of due process.

9      Defendant's Motion to Dismiss Plaintiff's Third Cause of Action is DENIED as to all

10  Defendants except Mr. Barbosa, to the extent that these claims arise under 42 U.S.C. § 1983 for

11  violations of First Amendment rights of association.

12      All claims are dismissed WITH LEAVE TO AMEND. Plaintiffs shall file any amended

13  complaint within 20 days of this order. No later than 20 days after service of any amended complaint,

14  Defendants shall file a response thereto.

15      Plaintiff is cautioned that this will be the last opportunity to amend. Plaintiff should only amend

16  if amendment will not be futile based on the law and holding in this Order. This court does not have the

17  resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order

18  gives the proper direction for the last time.

19  **SO ORDERED**
**Dated: July 24, 2014**

20                                        **/s/ Lawrence J. O'Neill**
                                     **United States District Judge**

21

22

23

24

25

26